Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5396 | **DATE** | 3/4/2004 |
| **CASE TITLE** | Michael J. Bonkowski vs. Z. Transport, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons given in the attached memorandum opinion, judgment is rendered in favor of the Plaintiff on Counts I and III and Count II is dismissed with prejudice. Defendant, Z Transport, Inc., is ordered to pay Plaintiff $89,725 in damages for Count I and $3,300 in damages for Count III.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 0 5 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 44 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| jar (lc) | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Michael J. Bonkowski ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 00 C 5396 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| Z Transport, Inc., and Zoran Trlin, ) | |
| ) | |
| Defendants. ) | |

DOCKETED
MAR 0 5 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a three-count Complaint against Defendants Z Transport, Inc. and Zoran Trilin. On the eve of trial, Defendant Trilin filed for bankruptcy protection and the claims against him were referred to the bankruptcy court. Plaintiff then proceeded in an unopposed bench trial on the counts against Defendant Z Transport, Inc. on September 16, 2002. The Court heard testimony from the Plaintiff, Mike Bonkowski, the Plaintiff's wife, Tammy Bonkowski, and admitted documentary evidence. The Court now makes the following findings of fact and conclusions of law. To the extent that any findings may be deemed conclusions of law, they shall also be considered conclusions. To the extent that any conclusions may be deemed findings of fact, they shall also be considered findings. See Miller v. Fenton, 474 U.S. 104, 113-14 (1985).

I.  **FINDINGS OF FACT**

   **A. The Parties**

   Plaintiff Bonkowski is a resident of Illinois. During all times relevant to this litigation, he was a commercial truck driver. Defendant Z Transport, Inc. (ZTI) is an Illinois corporation. At all times relevant to this litigation, ZTI was authorized as an interstate motor carrier by the

1

44

Federal Highway Administration pursuant to motor carrier authority MC 316363.

### B. The Relationship Between the Parties

#### 1. The Employment Agreement

On November 3, 1998, Plaintiff Bonkowski applied for employment with ZTI in response to a newspaper advertisement. (Pl. Ex. 1) The newspaper advertisement indicated that a "lease purchase" was available with ZTI. Plaintiff was familiar with lease purchase arrangements in the trucking industry because his former father-in-law had such an arrangement with Mayflower trucking.

On November 25, 1998, the parties entered into a contract styled as an "Independent Contractor Agreement." This agreement established that Plaintiff Bonkowski would serve as a driver for ZTI for a period of one year. Pursuant to the contract, Plaintiff would drive vehicles that were owned by ZTI. It set forth a salary schedule wherein Plaintiff would be compensated at a variable per mile rate, ranging from twenty to thirty cents per mile. This contract also included a clause that permitted ZTI to treat the failure to return its vehicles as theft in the event that the contract was cancelled, terminated, or breached.

On March 22, 1999, Plaintiff submitted to ZTI a written notice of termination of the employment agreement between the parties. By the terms of the termination notice, it was effective April 5, 1999. This agreement is not the subject of this litigation.

#### 2. The Lease Agreement

On April 6, 1999, Plaintiff and Defendant Trlin negotiated the purchase of a truck tractor ("tractor") from a Kenworth dealer in Chicago. The purchase order lists ZTI as the purchaser of a Kenworth tractor with a list price of $110,400. Plaintiff could not have obtained financing to

purchase the tractor on his own due to a personal bankruptcy in 1995. Plaintiff orally agreed to permit ZTI to deduct $10,000 from his pay in $500.00 per week increments as a down payment for the tractor. Plaintiff took possession of this tractor on July 5, 1999.

During the down payment deduction period, Plaintiff was paid as a company driver on the same pay scale (cents per mile) set forth in the employment agreement between the parties (20 to 30 cents per mile). Once the $10,000 down payment accrued in September 1999, Plaintiff was paid a percentage of the revenue from the trucking endeavor as an independent owner-operator. According to the terms of the oral agreement, Plaintiff was going to pay off the remainder of the amount due on the tractor over 30 months (130 weeks) in weekly payments of $1,477. During the payment period, title for the tractor remained with Defendant ZTI. While Plaintiff drove the tractor, he paid for all the fuel, repairs, and maintenance for the truck. He was the exclusive driver of the tractor and he was in exclusive possession of the tractor.

The agreement between Plaintiff and Defendant ZTI was entirely oral. Plaintiff requested a written lease purchase agreement more than once. At no time was the agreement between the parties ever reduced to writing.

On February 12, 2000, Plaintiff informed ZTI that he could no longer operate the tractor. Plaintiff was not earning sufficient income from the tractor to make a living. Plaintiff was willing to return the tractor to Defendant ZTI provided that Defendant ZTI refunded the moneys he had paid thus far for his ownership interest in the tractor.

Defendant ZTI reported the tractor as stolen to its insurance company and to the Chicago Ridge Police Department. Defendant Trlin, on behalf of ZTI, also reported to one of Plaintiff's prospective employers, Omega Fleet Service, that Plaintiff had stolen the tractor. Through the

3

intercession of the police, Plaintiff returned the tractor to ZTI later in February in exchange for a portion of the moneys he believed he was owed.

## II. CONCLUSIONS OF LAW

Plaintiff's Complaint contains three counts. Count I alleges that the lease purchase arrangement between him and ZTI violates the truth in leasing regulations, 49 U.S.C. § 14704 and 49 C.F.R. part 376. Count II alleges that the agreements between Plaintiff and ZTI constituted illegal contracts and should be rescinded. Count III alleges that ZTI committed slander when it claimed that Bonkowski stole the tractor.

### A. Count I: Truth in Leasing Regulation violation

Plaintiff alleges that the lease arrangement between him and ZTI violates the Truth in Leasing Regulations, 49 C.F.R. Part 376. The regulations require there to be "a written lease granting the use of the equipment. " 49 C.F.R. § 376.11. The written lease must meet the requirements set forth in 49 C.F.R. § 376.12.

It is uncontested that the agreement between the parties was entirely oral. Provided that their agreement can properly be characterized as a lease, the agreement violated the Truth in Leasing regulations.

The Court earlier denied Plaintiff's Motion for Summary Judgment on this count because the Defendants were contesting whether Plaintiff met the regulatory definition of owner. The regulations define an owner as a person "who, without title, has the right to exclusive use of equipment." 49 C.F.R. §376.2(d)(2). Plaintiff's unrebutted testimony at trial establishes that during the period that the tractor was in his possession, he used it to the exclusion of all others. Although Plaintiff did not have title to the tractor, he was an owner of the tractor under the

regulations.

The Truth in Leasing regulations define a lease as "[a] contract or arrangement in which the owner grants the use of equipment, with or without driver, for a specified period to an authorized carrier for use in the regulated transportation of property, in exchange for compensation." 49 C.F.R. §376.2(e). The arrangement, as described and documented at trial, met this definition. The Court finds that the agreement between the parties was a lease subject to the Truth in Leasing Regulations. Because the agreement was entirely oral, it violated the regulations.

Under 49 U.S.C. § 14704(a)(2), the Plaintiff can recover damages that result from a violation of the Truth in Leasing Regulations. Plaintiff sought damages in the amount of $89,725. This amount is equal to the total business and operating expenses that Plaintiff incurred during the period he was driving the tractor pursuant to the lease agreement. Defendant ZTI waived its ability to contest the amount of damages when it elected not to appear for trial. The Court finds that the Plaintiff is entitled to damages from Defendant ZTI in the amount of $89,725.

### B.     Count II: Illegal Contract

Count II of Plaintiff's Complaint was dismissed at the pretrial conference of February 1, 2002. (Pl. Reply Def. Mot. Partial Summ. J., at 11) ("As was discussed in the pretrial conference . . . and in the presence of this Court and all attorneys of record . . . Count II was dismissed."). As this was not made part of the docket earlier, the Court will now dismiss Count II of Plaintiff's Complaint with prejudice.

### C.     Count III: Slander

To sustain relief on Count III, Plaintiff must show three things: "(1) the defendant made a false statement concerning him, (2) there was unprivileged publication to a third party through the fault of the defendant, and (3) this caused damage to the plaintiff." Green v. Trinity Int'l University, 801 N.E.2d 1208, 1219 (Ill. App. Ct. 2003).

As to the first issue, Plaintiff proved at trial that Defendant ZTI told the Chicago Ridge Police, Great American Insurance Company, and Omega Fleet Service that Plaintiff stole the tractor. The Court sought post-trial briefing from the Plaintiff as to why the statement was false.

Plaintiff urges that because Defendant ZTI was aware that he lacked "the intent to permanently deprive" ZTI of the tractor, the statement that he had stolen it was false. The evidence presented at trial demonstrates that Plaintiff had offered to return the vehicle to Defendant ZTI at the time Defendant uttered the statements. Defendant plainly understood at that time that Plaintiff lacked the intent to permanently deprive it of the tractor. The statement that Plaintiff had stolen the tractor was false.

The next issue is whether Defendant's statements to any of the parties were privileged. In its summary judgment submissions, Defendant ZTI urged that the statements to both the police department and the insurance company were privileged. Defendant waived these privileges when it failed to appear for trial.

The only remaining issue on Count III is damages. The statement that Plaintiff stole the truck is incapable of an innocent construction and is defamatory per se under Illinois law. See Kolegas v. Heftel Broadcasting Corp., 607 N.E.2d 201 (Ill. 1992) (statements that impute the commission of a criminal offense are defamatory per se). "Such statements are so obviously and materially harmful that injury to the plaintiff's reputation is presumed." Green v. Trinity Int'l

University, 801 N.E.2d 1208, 1219 (Ill. App. Ct. 2003). The measure of damages from defamatory per se statements "is an estimate of the extent of the loss the plaintiff has suffered in the past and would suffer in the future either from a monetary or enjoyment of life standpoint." Winters v. Greeley, 545 N.E.2d 422, 427 (Ill. App. Ct. 1989).

Plaintiff seeks compensatory damages for this slander in the amount of $110,700 and punitive damages in the amount of at least $332,100. "[T]here is no scale by which to measure the monetary value of reputation, good will, loss of esteem and the like. The law nevertheless recognizes the impairment of reputation and standing in the community, the loss of esteem, personal humiliation and anguish as actual injuries which naturally flow from the publication of a defamatory falsehood." Winters, 545 N.E.2d at 427. Plaintiff seeks a grossly inflated amount of compensatory damages from Defendant's slanderous statements. The first two slanderous statements were made to the police and to an insurance company. Because both of those organizations receive thousands of complaints and claims each year, the actual damage to Plaintiff's reputation from the slanderous statements is small. These statements did cause Plaintiff personal humiliation and anguish, however, for which he will be compensated.

The third slanderous statement, to Omega Fleet Services, would presumably be much more damaging to Plaintiff's reputation. Plaintiff presented evidence that, after hearing the slander, Omega Fleet Services "wouldn't have hired him" (Dep. of Joanne Ehler, at 22, line 19) except that the company already had a good relationship with the Plaintiff due to his previous employment with the company. Because of this relationship, though, the President of Omega Fleet Services actually disregarded the statement. (Dep. of Joanne Ehler, at 21-22) Consequently, it caused little to no reputational harm to Plaintiff. As with the first two

7

statements, it caused Plaintiff personal humiliation and anguish and he will be compensated for those harms.

In light of this evidence, the Court finds that the amount of compensatory damages from Defendant's slanderous statements is relatively small. For a period of roughly one month, Plaintiff suffered the indignity of explaining to two agencies and his prospective employer why it was that Defendant ZTI was slandering him. Based on the Plaintiff's regular earnings under the lease agreement with ZTI of approximately $3,300 per month, the Court estimates the monetary value of this harm at $3,300. This should be sufficient to compensate Plaintiff for the harm he suffered.

The next question is whether Defendant's conduct justifies an assessment of punitive damages. "If the character of the conduct is of the sort that calls for deterrence and punishment over and above that provided by a compensatory award, then it is appropriate . . . to assess punitive damages." Winters, 545 N.E.2d at 427. Defendant need not have slandered Plaintiff to reclaim possession of the tractor, but the Court can understand the Defendant's inappropriate and tortious conduct given the uncertainties of the oral lease agreement between the parties. Consequently, the Court does not find a need to award punitive damages in this case.

## CONCLUSION

For the reasons give above, the Court finds for the Plaintiff on Count I and awards damages in the amount of $89,725; the Court dismisses Count II with prejudice; and the Court finds for the Plaintiff on Count III and awards damages in the amount of $3,300.

Enter:

David H. Coar
United States District Judge

Dated: March 4, 2004